IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **STUART TURNER** | : |
| | : |
| Plaintiff | : |
| | : |
| v. | :   Civil No. WMN 02CV2451 |
| | : |
| **KANA SOFTWARE, INC.** | : |
| | : |
| Defendant | : |
| | : |

**Affidavit of Geoffrey P. Roever**

**I, Geoffrey P. Roever, am over 18 years of age and competent to testify in this matter. The facts stated in this affidavit are within my personal knowledge and are true and correct.**

> **1. I am a member in good standing of the Massachusetts Bar and currently Associate General Counsel of Kana Software, Inc., a position I have held since June, 2001.  Prior to that, I was Associate General Counsel of Broadbase Software, Inc. when it was acquired by Kana Software, Inc., and prior to that, Corporate Counsel of Servicesoft, Inc. when it was acquired by Broadbase Software, Inc.**
>
> **2. Throughout the entire negotiations and consummation of the software licenses and maintenance order to Kana Software, Inc. from Verizon Internet Services, Inc. ("VIS") which is central to the present legal action, I was the Kana attorney assigned and who acted to provide legal support for the VIS order transaction process.**
>
> **3. Commencing early December, 2001, I began working with Stuart Turner to produce Kana's proposed order documents for an order from VIS, which represented a second order under a software license and maintenance agreement signed by Kana's predecessor, Servicesoft, Inc. and VIS's predecessor, Bell Atlantic Internet Services, Inc.  The documents consisted of an order document entitled Addendum Two and a quotation which was attached to it.  Various drafts of Addendum Two which I reviewed or prepared were exchanged between Kana and VIS over several weeks.  On December 21, 2001, I sent a draft of Addendum Two to VIS that contained all known contractual requirements of VIS, and indicated that Kana was**

willing to agree to this provided the signed Addendum Two and quotation were received by quarter end December 31, 2001. Subsequently Kana was advised by VIS that the VIS Order would not be consummated by that date.

4. After December, I heard nothing further about the potential order from VIS until Stuart Turner emailed me on March 6, 2002 a revision of Addendum Two that included a number of new provisions requested by VIS. Again several drafts with further proposed revisions which I reviewed or prepared were exchanged between Kana and VIS. On or about March 25, 2002, Kana and VIS signed Addendum Two including a provision permitting cancellation of the transaction by VIS on or before April 23, 2002 due to VIS's inability to secure financing for the transaction. However, this version of Addendum Two was not signed by GTE.Net LLC, an entity identified in the document as an additional party. In addition, VIS did not sign the quotation which accompanied the VIS Order document.

5. Upon reviewing Addendum Two as signed, I advised Kana's Finance Department that the payment terms had been revised, apparently by VIS and Kana Sales, without my knowledge. Jerry Shinn, V.P. of Kana Sales, then informed VIS that the payment terms would have to be revised to permit revenue recognition by Kana. Attached and incorporated herein are emails discussing that issue.

6. After April 18, 2002, I worked on the VIS agreements with Jerry Shinn, Vice President, and Gary Belonzi, who had replaced Stuart Turner as Kana's VIS Account Executive. Gary Belonzi did a significant amount of work in reaching agreement on the VIS deals after April 18, 2002.

7. On April 24, 2002, I received an email from Jerry Shinn stating that the funding for VIS had not been approved and that Kana had amended by hand the Addendum Two signed in March to extend the permitted cancellation date to April 24, 2002. On April 24, I drafted a formal amendment extending the cancellation date to April 25, 2002, which Kana and VIS both signed. Attached hereto are emails regarding that issue.

8. On April 24, I sent a proposed revised Addendum Two to VIS, which would cancel the prior version, revise the payment terms, and extend the cancellation date to May 31, 2002. VIS returned a draft with further changes, including changing the maintenance from standard to premium, changing the maintenance payment terms, adding a cap on maintenance fee increases, and adding additional licenses for a separate Verizon entity at no additional charge. I then provided VIS another draft clarifying some of these changes, and restricting the addition of affiliates of VIS that could use the software, and the revised Addendum Two was signed by the parties, including GTE.NET LLC, on or about April 25, 2002. The quote attached to that version of Addendum Two reduced the maintenance fee. The discussions

concerning these revisions included Gary Belonzi, Stuart Turner's replacement as VIS account executive.

9. In May, 2002 I worked further with Gary Belonzi to develop a revised version of Addendum Two to include a separate order by Verizon Services Group. After this was furnished to VSI, Verizon Services Group instead decided to place its own order directly with Kana on a different ordering document.

10. At the request of VSI, I then twice amended Schedule Two by hand to extend the cancellation date to June 7, 2002 and then to June 14, 2002.

11. In late May, 2002, I worked with Gary Belonzi on a further revised version of Schedule Two, which would supercede the prior versions, delete the licenses to a separate Verizon entity, reduce the total license fees, add certain ordering rights for additional software products, and permit cancellation by June 7, 2002. This version of Addendum Two was signed by all parties on or about June 3, 2002.

12. To the best of my knowledge, this June 3, 2002 version of Schedule Two has not cancelled by VSI and remains in effect.

I swear and affirm under the penalties of perjury that the above information is true and correct .

_____/s/_____
Geoffrey P. Roever

Dated:_____