# EXHIBIT
# 1

DECLARATION OF JERRY SHINN

I, Jerry Shinn, declare as follows:

1. I am over 18 years of age and competent to testify about the matters in this Declaration from personal knowledge.

2. I understand that this Declaration will be submitted in support of Stuart Turner's lawsuit against Kana Software, Inc. ("Kana") for an unpaid commission on a sale to Verizon in 2002 for over $2,000,000. I believe that Mr. Turner is entitled to a commission on that Verizon sale.

3. I worked for Kana as a sales manager, and supervised Mr. Turner during his employment at Kana. I was personally familiar with Mr. Turner's job performance.

4. Mr. Turner focused most of his sales efforts in 2001 and 2002 on Verizon, which we believed was a good potential customer for Kana's software and hardware products. Mr. Turner involved me in some of his meetings and conversations with Verizon. (KANA has a major account focus. That said, the decision to focus on Verizon was not a directive from KANA but Stuart's decision.)

5. Mr. Turner came close to concluding a deal with Verizon in late 2001 for over $6,000,000. The Verizon employees I had contact with told me that they would recommend the sale to Verizon's management, and in December, 2001, lawyers for Verizon and Kana exchanged drafts of a sales contract. Unfortunately for Kana, Verizon management did not approve the larger deal. Based on my conversations with Verizon representatives, I do not believe that Mr. Turner was at fault in any way for Verizon's decision not to close that larger deal.

6. Kana's President Tom Doyle put enormous pressure on Kana's sales force to meet sales quotas and earnings forecasts. During late 2001 and early 2002, Kana was in financial difficulties, and was having difficulty meeting its earnings projections, as evidenced by them raising $35 million in new cash.

7. In early 2002, Mr. Turner was presenting a smaller sale to Verizon that would have brought in over $2,000,000 in revenue to Kana. Doyle repeatedly pressured me to have Turner close the deal in Kana's first quarter of 2002. Based on my contacts with Verizon employees during that period, I believe that Mr. Turner was diligent and effective in trying to close that Verizon sale during the first quarter of 2002.

8. In March, 2002, Verizon signed a contract worth over $2,000,000 in revenue to Kana, but Verizon insisted that the contract be made contingent on Verizon's internal budgeting process.

9. In April of 2002, shortly after Verizon signed the contingent contract, while we were working to remove the contingency and close the sale to Verizon, Tom Doyle directed me to fire Mr. Turner whether or not the Verizon deal was completed, and announced that Kana would not pay Mr. Turner a commission even if the deal came in the day after Stuart was fired. Mr. Doyle did not have direct knowledge of Mr. Turner's skills as a salesman. I told Mr. Doyle that Mr. Turner was an excellent salesman, and that the delays in closing the Verizon deal were not Mr. Turner's fault. Nevertheless, Mr. Doyle insisted that I fire Mr. Turner. Reluctantly, I followed Mr. Doyle's order and fired Mr. Turner.

10. Historically there were other large deals that were forecasted in prior quarters that were not closed as forecasted and those sales reps. were not fired.

11. After Mr. Turner was fired, I needed to appoint another salesman as the account

representative to Verizon. When I told Mr. Doyle that I would be introducing a new sales representative to Verizon, Mr. Doyle announced that Kana would not pay any salesman a commission on the Verizon sale that Mr. Turner had negotiated before he left.

12. I concluded that Mr Doyle's primary motivation in firing Mr. Turner was to deprive Mr. Turner of a commission on the Verizon deal, and to increase Kana's profitability by not paying a sales commission to anyone. I concluded this based on Mr. Doyle's lack of personal knowledge about Mr. Turner's skills as a salesman, Mr. Doyle's disregard of my opinion that Mr. Turner was an excellent salesman who was not at fault for the delay in closing the Verizon deal, Mr. Doyle's insistence that no salesman would receive a commission on the Verizon deal, and Kana's financial difficulties at the time.

13. Verizon got internal budgeting approval for the sale Mr. Turner had negotiated within months after Mr. Turner was fired. Verizon and Kana concluded that sale in June, 2002. Mr. Turner was primarily responsible for winning that contract with Verizon. Mr. Doyle insisted that no salesman receive a commission on the sale.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 11, 2003

Jerry Brinn