# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
~Northern Division~

| | |
|---|---|
| STUART TURNER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. WMN 02CV2451 |
| KANA SOFTWARE, INC., | ) |
| Defendant. | ) |

### DECLARATION OF PLAINTIFF STUART TURNER

I, Stuart Turner, declare as follows:

1. I am over 18 years of age and competent to testify about the matters in this Declaration from personal knowledge.

2. In 1999-2000, I worked as a salesman for Silknet, a software company that was acquired by Defendant Kana in 2000. Jerry Shinn supervised me during my employment at Silknet/Kana. While working for Silknet/Kana, I significantly exceeded my sales quotas. I estimate that my sales quotas in 1999-2000 totaled approximately $2,000,000. During that period, I received commissions on software sales for deals that resulted in over $10,000,000 of gross revenue for Silknet/Kana.

3. In early 2001, I voluntarily left employment at Kana to work for a start up company. Jerry Shinn recruited me to return to work for Kana selling software. I went back to work for Kana as an Account Executive in May, 2001. My sales quota was $625,000 per quarter in 2002. Kana promised that it would pay me commissions under the terms of its written North American Incentive Plan.

06/13/2003  12:06    3019836205                MEAD                              PAGE  02

4. When technology stocks and internet companies began to lose value and financing, the market for Kana's software declined significantly. In this difficult market, I and other Kana salespeople had problems closing sales. I did not close any sales during 2001.

5. I focused my sales efforts on Verizon. In late 2001, Verizon employees indicated a willingness to purchase over $6,000,000 of Kana's software. Based on those representations, I forecast that a significant sale to Verizon was likely to close in the last quarter of 2001. Kana and Verizon exchanged drafts of sales contracts in late 2001. Verizon underwent a significant management change at the end of the year, killing our potential deal and other similar projects.

6. In early 2002, Verizon employees indicated a willingness to purchase over $2,200,000 of Kana's software. Based on those representations, I forecast a sale to Verizon in the first quarter of 2002. Verizon began negotiating a written contract to purchase Kana's software, but in March, 2001, Verizon insisted on adding a contingency that would allow Verizon to back out of the contract if it could not secure internal financing.

7. On March 31, 2002, Verizon signed a contingent contract to purchase Kana's software. With minor changes, including having a subsidiary purchase some of the software, Verizon went forward with the Kana purchase that I had sold and negotiated. Kana recognized over $2,200,000 in revenue from the Verizon sale shortly after I was fired.

8. I had no intention of voluntarily leaving employment with Kana until I received a commission on the Verizon deal.

2

06/13/2003  12:06   3019836205                MEAD                                    PAGE  03

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 13, 2003.

*[signature]*
Stuart Turner

3