**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| STUART TURNER | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil No. WMN 02CV2451 |
| | : | |
| KANA SOFTWARE, INC. | : | |
| | : | |
| Defendant | : | |
| | : | |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Comes now Defendant Kana Software, Inc. by its counsel Rebecca Newman Strandberg and Rebecca Strandberg & Associates, PA. filing its Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and states as grounds therefore:

### I. Statement of Issues

**A.   Count Two Quantum Meruit/Unjust Enrichment.**

Defendant is entitled to Judgment as a matter of law as to Count Two of the Complaint. Plaintiff has not addressed this issue in its Opposition. Plaintiff has not controverted the law nor provided any facts regarding Count Two of the Complaint that quantum meruit/unjust enrichment is not available under Maryland law.

**B.   Count One Breach of Contract**

Plaintiff appears to argue two alternative theories under its breach of contract count: (1) a breach of an implied covenant of good faith and fair dealing and, (2) a breach of the specific or express provisions of the actual contract. Defendant is entitled to judgment as a matter of law as

to Count One under either theory.

(1) A federal court must apply substantive state law in a diversity action. 28 U. S. C. Sec. 1652.[1] Maryland does not recognize an implied covenant of good faith and fair dealing in an at-will employment contract. Suburban Hospital v. Dwiggins 324 Md. 294, 309-10, 596 A.2d 1069, 1076-77 (1991). Defendant is therefore entitled to judgment as a matter of law on Count One as to a breach of an implied covenant of good faith and fair dealing.

(2) Plaintiff is bound to the terms of the Kana 2002 North America Incentive Plan ("Kana Incentive Plan"), the contract applicable to this action. Plaintiff has submitted no admissible factual evidence to the court to controvert the specific facts submitted by Defendant that Plaintiff is not entitled to commissions under the Plan. Since there is no genuine issue as to any material fact, Defendant is entitled to judgment as a matter of law. F. R. Civ. Proc. 56(c).

## II. Argument

**A. Maryland law applies and there is case law directly on point which precludes Plaintiff from alleging a breach of implied covenant of good faith and fair dealing.**

The case at bar is a diversity action. It is well settled that a federal court must apply the law of the state in a diversity action which in this is case Maryland law. See 28 U.S.C. §1652; Smith v. Sperling, 77 S.Ct. 1112 ,U.S. Cal.,(1957) ;Swanson v. Traer, 77 S.Ct. 1119 U.S.

---

[1] The federal court applies the federal procedural law. Plaintiff cites Bleich v. Florence Crittenton Services 98 Md. App. 123 632 A 2d 463 (CSA, 1993) as procedural authority in support of denying summary judgment. This case is a Maryland State Court decision involving a claim of wrongful discharge. Such precedent is inapplicable since the standard and procedure for summary judgment in a federal court is governed by F. R. Civ. Proc. Rule 56.

Ill.,(1957); Bernhardt v. Polygraphic Co. of America, 76 S.Ct. 273, U.S.Vt.(1956) (Congress does not have constitutional authority to make law that is applicable to controversies in diversity of citizenship cases); Bernhardt v. Polygraphic Co. of America, 76 S.Ct. 273 U.S.Vt.(1956) (Federal court enforcing a state-created right in a diversity case is in substance only another court of the state, and federal court therefore cannot substantially affect enforcement of right as given by state). Ragan v. Merchants Transfer & Warehouse Co., 69 S.Ct. 1233,U.S.Kan.(1949) (where cause of action is created by local law which qualifies or abridges it, federal court in diversity of citizenship case must follow suit) Woods v. Interstate Realty Co., 69 S.Ct. 1235 U.S.Miss.,1949 For purpose of diversity jurisdiction, a federal court is in effect only another court of the state. Angel v. Bullington, 67 S.Ct. 657 U.S.N.C. (1947) (for purpose of diversity jurisdiction, a federal court is, in effect, only another court of the state).

The cases cited by Plaintiff apply New Jersey law and are not applicable when there is Maryland legal precedent. Wakefield v. Northern Telecom, Inc. 813 F 2d 535 ( 2nd Cir. 1987) is from the U. S. Court of Appeals for the Second Circuit and applies New Jersey law as does Electronics Store, Inc. V. Cellco Partnership 127 Md. App. 385, 396  732 A 2d 980, 985-986.(CSA, 1999) ("By virtue of a governing law provision in the Agreement, New Jersey law governs its interpretation" Id.).

Plaintiff provides no **Maryland** case law which overrules Suburban Hospital v. Dwiggins 324 Md. 294, 309-10, 596 A.2d 1069, 1076-77 (1991) wherein the Maryland Court of Appeals, the highest appellate court in Maryland, held that there is no implied covenant of good

faith and fair dealing in an at-will employment contract in Maryland.[2]  None of the cases cited by Plaintiff regarding an implied covenant of good faith and fair dealing are applicable because they do not address **at-will employment** contracts and/or they do not apply Maryland law.[3]  Plaintiff concedes that Turner was an at-will employee (Plaintiff's Opposition at p.9) and Suburban Hospital vs. Dwiggins, *supra* also dealt with an at-will employee.

Accordingly, Defendant is entitled to judgment as a matter of law that there has been no breach of an implied covenant of good faith and fair dealing[4]

**B.     There are no genuine issues of material facts to prove a breach of an express contract provision claim.**

(1) Legal Standard for Summary Judgment

The court shall grant summary judgment pursuant to Fed. R. Civ. P 56 (c), if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

[2]     "Although we have generally implied a covenant of fair dealing in negotiated contracts, there is no implied covenant of fair dealing with regard to termination by either side in an employment-at-will. The employer or employee may terminate "at-will" even though to do so might be unfair to the other. Any modifications to the employment relationship in the instant case were self-imposed by the employer and unilateral. The employees remained free to quit the employment at any moment for any reason, and no grievance procedure would be available to the employer. (Citations omitted)" Suburban Hospital v. Dwiggins 324 Md. 294, 309-10, 596 A.2d 1069, 1076-77 (1991).

[3]     Parker v. Columbia Bank 91 MD. App. 346, 365-366 , 604 A 2d 521, 530-531 involved loan agreements, not an employment at-will contract so it is not precedent in light of the Dwiggins holding.

247-48, 106 S. Ct. 2505 (1986).

A genuine issue exists when the evidence before the court is of a nature that a reasonable jury could return a verdict in favor of the non-moving party. The evidence must be probative and more than a scintilla. Celotex Corp. V. Catrett,  477 U. S. 317, 322, 106 S. Ct. 2548, 2552(1986).

A material fact depends upon the substantive law. A material fact is one which might affect the outcome of the case. Anderson v. Liberty Lobby, Id. at 248, 2505**.**

Judgment is appropriate as a matter of law when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. Cleveland v. Policy Management Sys. Corp. 526 U. S. 795, 804, 119 S. Ct. 1597, 1603 (1999).

### (A) Material Facts

 The employment arrangement between Kana Software, Inc. and Stuart Turner was "at-will." At-will means that the contractual arrangement may be terminated by either party at any time. An at-will contractual employment agreement may contain terms which are oral and terms which are in several separate written documents. Mr. Turner's employment arrangement was at-will and its terms were contained in his offer letter and in the Kana Incentive Plan. Plaintiff mis-characterizes the Kana Incentive Plan as a separate contract. It is actually a separate term of Mr. Turner's at-will employment contract which is express and in writing.

To be entitled to damages for a breach of an at-will employment contract in Maryland, Plaintiff  must prove that all the conditions of the express provisions of the contract are met. This includes  proving that he actually performed the services  required and met the conditions required in the express contract. Common law contract principles apply to employment contracts.

Maryland Credit Corp. v. Hagerty 216 Md. 83, 89-90, 139 A.2d 230, 233 (1958). Plaintiff concedes in its Opposition that he failed to satisfy the conditions necessary to trigger Kana's performance.

Plaintiff has produced no specific admissible evidence to dispute the specific evidentiary facts included in Defendant's Motion for Summary Judgment. Plaintiff has produced no specific factual evidence to support his assertion that the contingent order which he procured was a "qualified booking" under the express provisions of the Kana Incentive Plan. Plaintiff's affidavits contain conclusory statements and not specific facts. Those are not sufficient to create a genuine issue of material fact. Evans v. Technologies Applications & Serv. Co. 80 F 3d 9545 (4th Cir. 1996).[5]

It is undisputed that:

(1) that the order Mr. Turner got signed was a contingent order, and not a qualified booking;

(2) that the order Verizon eventually did place had different terms and conditions, including different parties and different dollar amounts;

(3) that revenue on the order Verizon eventually placed was collected more than 30 days after Plaintiff was fired.

In order to receive a commission, Mr. Turner would have had to produce a "qualified booking" where Kana collected revenue, either during his employment, or 30 days thereafter. (See Section III *infra*, Analysis of Evidence, herein, Fact #8 ). Mr. Turner has produced no

---

[5] See the attached Chart of Evidence which analyzes in detail each of the facts as to materiality, whether disputed and if disputed whether the evidence is specific and admissible. Exhibit 1.

evidence that the contingent order he procured was a qualified booking or even any admissible specific evidence that it should be considered a qualified booking. Jerry Shin's affidavit does not even address this issue.

Plaintiff provides no factual admissible evidence to contradict the evidence presented by Defendant that Plaintiff had not met the conditions precedent necessary for him to be entitled to a commission under the Kana Incentive Plan.

### III. ANALYSIS OF EVIDENCE

In Defendant's Original Motion for Summary Judgment, a number of facts which were undisputed were listed. The relevant facts as to whether or not Plaintiff has met his burden of proving that all the conditions necessary for him to receive a commission were listed at facts 6-20. *See* Defendant Kana's Memorandum in Support of Motion for Summary Judgment, Statement of Undisputed Facts, at pp. 11-14. Plaintiff has provided no specific factual evidence which would be admissible at trial to dispute those facts. Conclusory statements without specific facts cannot defeat a motion for summary judgment. Moore v. J. B. Hunt Transport, Inc. 221 F 3d 944 (7th Cir. 2000). A summary judgment affidavit must contain specific facts which would be admissible at trial, not conclusory statements. Evans v. Technologies Applications & Serv. Co. 80 F 3d 9545 (4th Cir. 1996).

The following is an analysis of the evidence relating to the Statement of Undisputed Facts submitted by Defendant in its Motion for Summary Judgement at pp. 11-14 with annotations in italics (1) as to whether or not the facts are material, (2) whether they were admitted, (3) if they are disputed, what evidence Plaintiff has provided disputing the fact and (4) analyzing Plaintiff's

evidence as to whether it contains specific admissible facts to create a genuine dispute of a material fact. Citations are to either Plaintiff Mr. Turner's affidavit or Jerry Shin's affidavit, Exhibits 3 and 1, respectively, appended to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

This chart clearly shows that Defendant is entitled to Summary Judgment because Plaintiff has not produced any specific factual admissible evidence that raises a genuine issue of a material fact. As stated previously, Plaintiff has only produced a few conclusory statements without specific facts.

1. Stuart Turner was hired by Kana as an Account Executive to start on May 14, 2001 and to receive a salary plus commissions. He was in sales and given a sales quota. (Defendant's Exhibit 10, Turner Depo. at pp. 64-65).(Turner Offer letter, Defendant's Exhibit 1) *Admitted. See, Turner Affidavit at ¶ 8.*

2. The April 30, 2001 letter from Kana which Stuart Turner signed, sets forth the terms and conditions of his employment, including his salary. It also states "Your employment with Kana is not for a specific time. As a result, either you or Kana may terminate your employment at any time, for any reason, with or without cause." (Defendant's Exhibit 1) *Undisputed. Plaintiff did not produce any evidence to dispute and the facts are not mentioned in Turner's affidavit.*

3. Mr. Turner was terminated for unsatisfactory job performance, i.e. his inability to forecast and close business on April 18, 2002. (Defendant's Exhibit 3, Kana letter terminating Mr. Turner; Defendant's Exhibit 10 - Turner Depo. at pp. 136, 137;

       Defendant's Exhibit 13, Doyle Affidavit; Defendant's Exhibit 15, Moore affidavit). *Disputed. However, this is not a material fact since it does not affect whether or not he is entitled to a commission under the express provisions of the Kana Incentive Plan. These facts might only be relevant if Maryland recognized an implied covenant of good faith and fair dealing which it does not.*

4. Stuart Turner received a salary of $4166.67 semi-monthly. (Exhibit 1; Exhibit 10, Turner Depo. at pp. 142-147) *Undisputed. Plaintiff does not mention this in his affidavit or produce any other evidence to dispute.*

5. Mr. Turner was paid all of the salary that he was owed. (Exhibit 10, Turner Depo. at p. 147) *Undisputed. Plaintiff does not mention in his affidavit or produce any other evidence to dispute this fact.*

6. The Kana Incentive Plan controlled or governed when commissions were earned by Mr. Turner. (Exhibit 2; Exhibit 10, Turner depo. at pp. 143-147). The only written agreements between Mr. Turner and Kana were the Kana Incentive Plan and his letter of employment dated April 14, 2001. (Exhibit 10, Turner Dep. 92, lines 5-9; Exhibit 1) *Admitted. Turner's Affidavit at ¶3.*

7. The Kana Incentive Plan provided that Account Executives earn a commission on "qualified bookings." The plan also provides that Kana has "sole discretion" to determine what constitutes a qualified booking. Mr. Turner admitted during his deposition that Kana had the sole discretion to determine what is a qualified booking. (Exhibit 2; Exhibit 10 Turner 142-147). *Undisputed. No evidence offered to dispute this fact. In fact, this is not discussed in either affidavit or in*

*any evidence offered by Plaintiff in his Opposition. There is no mention of what constitutes a "qualified booking" or why the transaction referred to in paragraph 9 of the Complaint should be considered a qualified booking in either Mr. Shin or Mr. Turner's deposition.*

8.  Under the Kana Incentive Plan, commissions are paid as follows: Sales Representatives or Account Executives earn 50% of a commission by "securing" a "qualified booking". ( Exhibit 2; Exhibit 10,Turner Dep. at p.145). 50% of the applicable commission will be earned by securing Kana's actual receipt of payment for qualified bookings previously secured by the employee. Id. Kana has "sole discretion" to determine what constitutes a qualified booking. (Exhibit 2; *see* Exhibit 10, Turner Dep. at 146)

    The Plan provides that "Bookings not collected within 90 days of the original due date will be debooked and any previously paid commissions will be due back to KANA. (Exhibit 2)." Mr. Turner has admitted that this policy also applies (Exhibit 10,Turner Dep. at 35).

    The Plan also provides that "Commissions will be deemed earned and payable if the collection on the original booking occurs within 30 days of an employee's last date of employment. Except for the foregoing, commissions not earned at the time employment terminates (for any reason) cannot be thereafter earned"(Exhibit 2). *Undisputed. Plaintiff offered no evidence to dispute these facts.*

9. Stuart Turner did not obtain a single "qualified booking" under the Kana Incentive Plan between May 14, 2001 and the time he was terminated on April 18, 2001. (Exhibit 10, Turner deposition pp 85-86) *Disputed. However, no specific admissible evidence was provided by Plaintiff to create a genuine issue of a material fact that the contingent contract was a qualified booking. In Turner's affidavit in ¶7 he admits that the March Verizon contract was contingent. The only evidence that it <u>might</u> be a qualified booking with collection within 30 days of his termination was the statement in Shin's affidavit that a "Verizon" deal closed in June which was more than 30 days after Turner's termination on April 18,2002 although payment was not actually received by Kana on these deals until August, 2002.*

10. Mr. Turner obtained a contingent order from two Verizon subsidiaries, VIS and GTE.net, LLC , referred to herein as VIS, on or about March 25, 2002 for $2,643,200.(Defendant's Exhibit 4)  This order  was never signed by GTE.net, LLC and the Purchase Order was not signed at all. This order could be canceled by VIS until April 23, 2002.   (Exhibit 10, Turner Dep 121 .inc exhibit 16, an email from Stuart Turner dated March 22, 2002; Exhibit 12, Roever affidavit ) *Turner admits it was contingent in ¶7 of his affidavit. Plaintiff offered no evidence to dispute any other elements of this statement of fact, such  as to the failure of a party to sign.*

11. Stuart Turner sent an email to Brian Moore concerning the VIS agreement signed on or about March 25, 2002 and stated: " Verizon has agreed to get the agreement

11

signed by March 31st if we will give them an out as part of the above mentioned paragraph. The out is if they cannot get their funding by 23rd April they can walk away from the deal. Although we will not be able to book this, this quarter." ( Exhibit 10, Turner dep. 121, Exhibit 16; See also Moore Affidavit) *Undisputed This is not discussed by Plaintiff in his Opposition.*

12. Aaron Jaeger, Kana Revenue Manager, made a determination that the VIS agreement dated March 31, 2002 and signed on or about March 25 by VIS, was a contingent order, i.e. Exhibit 4, could not be recognized as revenue and was not a qualified booking which would have entitled Plaintiff to incentive pay under Exhibit 2, the Incentive Plan ( Exhibit 2; Exhibit 11, Jaeger affidavit) *Undisputed, The only evidence submitted was a conclusory statement of Jerry Shin that "Turner was primarily responsible" at ¶13 of his affidavit and this is conclusory opinion evidence rather than specific factual evidence and should be stricken.*

13. The deal represented by Exhibit 4, was not disclosed to independent auditors or the SEC in the first quarter of 2002, was not included in the income statement or the balance sheet for the first quarter of 2002 and was not announced to the public. It was never consummated. (Exhibit 11, Jaeger affidavit) *Undisputed. The only evidence submitted was a conclusory statement of Jerry Shin that "Turner was primarily responsible" at ¶13 of his affidavit and this is conclusory opinion evidence rather than specific factual evidence and should be stricken. evidence rather than specific factual evidence and should be stricken.*

14. Brian Moore, Kana's Senior Vice President of Sales Operations, told Mr. Turner

that he needed to have the contingency in the VIS agreement dated March 31, 2002 removed quickly. (Exhibit 10, Turner deposition 181-183; Exhibit 15, Brian Moore affidavit) *Undisputed*

15. Tom Doyle, Kana's Chief Operating Officer, was concerned about Mr. Turner's lack of sales and inability to accurately forecast sales. After Mr. Turner failed to close the deal he had forecast to close in the first quarter of 2002, Mr. Doyle gave Mr. Turner the first two weeks in April to remove the contingency and close the deal. The contingency was not removed in that time frame, so Mr. Turner was terminated on April 18, 2002. (Exhibit 13, Doyle affidavit) *Undisputed that the deal did not close while Mr. Turner was employed or that the contingency has not been removed. Plaintiff provides no specific admissible evidence to show that he actually did accurately forecast sales or that specific named individuals were kept on by Kana without making any sales and also inaccurately forecasting sales. Jerry Shin's affidavit is not sufficient to create a genuine issue of a material fact because it does not provide specific facts, i.e. names of sales representatives, dates or whether or not they had also not made any other sales.*

16. Kana did enter into two agreements with Verizon subsidiaries in May and June of 2002. (Exhibits 5, 6, Exhibit 12, Affidavit of Geoff Roever) *Undisputed.*

17. The two agreements between Kana and Verizon subsidiaries had different terms and conditions than the contingent VIS agreement signed on March 25, 2002. Both of these agreements had the necessary language for Kana Finance to recognize revenue, the contingencies were removed or canceled from the

agreements, they had different monetary and other terms and conditions and they were signed by the necessary parties. Id. *Undisputed. Plaintiff does not provide any specific factual evidence to dispute that the agreements had different terms and conditions. Moreover, Jerry Shin was still employed by Kana Software, Inc. at the time and familiar with the agreements and could have provided controverting evidence if it was available. Jerry Shin's conclusory statement that "Mr. Turner was primarily responsible for winning that contract with Verizon" paragraph 13, Shin Affidavit, is a conclusory statement and not a specific fact which creates a genuine issue of a material fact.*

18. Significant work was done by Kana Marketing and Sales personnel, including Gary Belonzi on completing the agreements referred to as Exhibits 5 and 6, a sale of software to VIS and GTE.NET, LLC after April 18, 2002. ( Exhibit 15, Moore affidavit, Exhibit 12, Roever affidavit) *Undisputed. Plaintiff does not provide any specific factual evidence to dispute that the significant work was done on the order after Mr. Turner left. Moreover, Jerry Shin was still employed by Kana Software, Inc. at the time and was responsible for the order and could have provided controverting evidence if it was available. (See affidavit of Tom Doyle attached hereto that Jerry Shin was primarily responsible for the Verizon deal after Mr. Turner left). Jerry Shin's conclusory statement that "Mr. Turner was primarily responsible for winning that contract with Verizon" paragraph 13, Shin Affidavit, is a conclusory statement and not a specific fact which creates a genuine issue of a material fact.*

19. No revenue was received on the March agreement signed by VIS listed as Exhibit 4.(Exhibit 11, Jaeger affidavit) *Undisputed. Plaintiff does not provide any specific factual evidence to dispute that no revenue was received on that order. Moreover, Jerry Shin was still employed by Kana Software, Inc. and remained so until July 31, 2002 and was responsible for the order (See affidavits of Tom Doyle) and could have provided specific controverting evidentiary facts if available.*

20. No collection of payment was received from any agreement with subsidiaries of Verizon until August, 2002, more than 30 days after Mr. Turner was terminated. (Exhibit 9, Defendant's Answers to Interrogatories, Number 5; Exhibit 11, Jaeger affidavit ) *Undisputed. Plaintiff does not provide any specific factual evidence to dispute that no revenue was received on that order. Moreover, Jerry Shin was still employed by Kana Software, Inc. until July 31, 2002 and was responsible for the order (See affidavits of Tom Doyle) and could have provided specific controverting evidentiary facts if available. Shin's affidavit mentions closing the deal in June( which is more than 30 days after Plaintiffs termination), does not dispute a different deal and is a conclusory fact versus the specific factual dates provided by Defendant. Shin's affidavit is not sufficient for a finder of fact to determine that Plaintiff is due to a commission under the Kana Incentive Plan.*

### IV. FACTS WHICH ARE NOT MATERIAL

Certain facts relied upon Plaintiff to attempt to create a genuine issue of a material fact are not material and/or not admissible.  Facts which are not material include Jerry Shin's opinion

of Plaintiff as a salesman, Tom Doyle's state of mind, and the reason for Plaintiff's termination, assuming arguendo it was to prevent paying a commission, since there is no implied covenant of good faith and fair dealing.

Plaintiff's prior employment and performance with Silknet is also irrelevant and immaterial since his employment agreement/offer letter dated April 30, 2001, Exhibit 1, specifically "supersedes all prior or contemporaneous oral or written communications and representations."

The state of mind evidence in Jerry Shin's affidavit is irrelevant as to contractual issues since there is no implied covenant of good faith and fair dealing recognized in Maryland. The material issue is therefore whether or not Plaintiff met the conditions of the Kana Incentive Plan necessary to earn a commission. Jerry Shin's affidavit is also not admissible under the Federal Rules of Evidence Rule 701 because it is opinion evidence. State of mind opinion evidence is not allowable lay witness testimony. See, U. S.v. Hauert 40 F 3d 197 (7th Cir. 1994) cert.denied. 115 S. Ct. 1822, 514 U. S. 1095. U. S. v. Rea 958 F 2d 1206 (2nd Cir. 1992) (involving state of mind of defendant in tax evasion prosecution). U. S. v. Brown 938 F. 2d 1482 (1st Cir. 1991), cert denied. 112 S. Ct. 611, 501 U. S. 992 (state of mind as to defendant upon arrest not admissible); U. S. v. Ruppel 666 F 2d 261, (5th Cir. 1982) reh denied. 671 F 2d 1378, cert. denied 102 S. Ct. 3487, 458 U. S. 1107, reh. denied 103 S. Ct. 17, 458 U. S. 1132.(admission of opinion testimony about defendant's state of mind is highly prejudicial and must be avoided). (See also Defendant's Motion to Strike Jerry Shin's affidavit which is incorporated herein).

**CONCLUSION**

The Kana Incentive Plan was an express contractual agreement between the parties.

Plaintiff admits in its Memorandum that the Plan "promised Turner a commission on the Verizon deal <u>if</u> Kana received payment within 30 days after his termination date, <u>or</u> if Kana determined that a signed contract with Verizon was a qualified booking." (Plaintiff's Opposition at p.9, emphasis added). Plaintiff concedes that Kana did not recognize any revenue from the Verizon deal until more than 30 days after Mr. Turner was terminated. <u>See</u> Plaintiff's Opposition at p.5. Plaintiff also concedes that there was a contingency on the deal and offers no specific admissible evidence to show that the order should be considered a qualified booking . Plaintiff has the burden of proving that the conditions precedent to his receiving a commission under the Kana Incentive Plan have been met and he has not done so. In response to Defendant's Motion for Summary Judgment, Plaintiff was to produce specific admissible factual evidence to show there was a genuine dispute of a material fact. Plaintiff has not done so. Plaintiff has neither disputed the material facts, nor provided evidence which is specific and admissible.

     **Wherefore** Defendant is entitled to Summary Judgment on all Counts and for such other relief as the Court finds appropriate including costs and reasonable attorneys fees.


                               Respectfully submitted,

                               _____/s/_____
                               Rebecca N. Strandberg, Esquire
                               Maryland Federal Bar No. 02196
                               Rebecca N. Strandberg & Associates, P.A.
                               4405 East West Highway, Suite 308
                               301-656-9547
                               Strandberglaw@aol.com

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** this 11th day of July, 2003 that a copy of the foregoing Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment was served electronically on:

Mark London, Esquire
Christopher B. Mead, Esquire
London and Mead
Suite 320
1225 19th Street, N.W.
Washington, DC 20036
Counsel for Plaintiff Stuart Turner

                                                           Rebecca Newman Strandberg, Esquire