**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STUART TURNER | : | |
| | : | |
| Plaintiff | : | |
| v. | : | Civil No. WMN 02CV2451 |
| | : | |
| KANA SOFTWARE, INC. | : | |
| | : | |
| Defendant | : | |
| | : | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
RECONSIDERATION OF THE COURT'S SEPTEMBER 26. 2003 MEMORANDUM
AND ORDER**

Defendant hereby moves for reconsideration of the Memorandum Opinion filed by this
Court on September 26 , 2003, pursuant to Fed. R. Civ. P. 59(e). The analysis of the Plaintiff as
accepted by the court in its September 26, 2003 Memorandum and Order ("Order") requires that,
for there to be an implied covenant of good faith and fair dealing in the Kana North American
Incentive Plan ("Incentive Plan"),  it must be a "separate contract" from the underlying
employment agreement, which is legally impossible.  Defendant brings this Motion on the
following grounds:

1.    Plaintiff's Complaint in Count One paragraph 6 states that he was "wrongfully
    terminated."  Defendant was not given notice of the fact that Plaintiff considered
    its breach of contract claim to be distinct from the employment agreement, and
    thereby not a wrongful termination claim until Plaintiff's Opposition to
    Defendant's Motion to Strike.

2.    Defendant was not given the opportunity to respond to new substantive arguments

1

made by Plaintiff in its Opposition to Defendant's Motion to Strike.

3.    In addition, in its present posture, if the Kana North American Incentive Plan ("Incentive Plan") is a separate contract, then it must fail for lack of consideration under controlling Maryland law.

4.    The Wakefield[1] case, which applied New Jersey law,  was a termination case in which the sales person had completed all that was necessary to earn the commission. It is undisputed that Turner had not done all that was necessary to earn the commission in the case at bar.

## STANDARD

Under Fed. R. Civ. P. 59(e), a motion for reconsideration to alter or amend a judgment is proper when it is necessary to correct a clear error of law or to prevent manifest injustice. Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). If Defendant is not given the opportunity to respond  to new evidence and arguments on a Motion for Summary Judgment there will be a manifest injustice.

## ARGUMENT

**A.    Commissions Contract Cannot Be a Separate Contract**

**1. Turner's commissions are an integral part of his employment contract which is at will.  If Plaintiff is alleging that the North American Incentive Plan is a contract separate from the employment contract, it must fail for lack of consideration.**

Black letter contract law requires that in order to have a legal and enforceable contract you must have mutual consideration. MPJI 9:9, p 228, 1995.   Therefore, even if we

---

[1] Wakefield v. Northern Telecom, 813 F.2d 535 (2nd Cir. 1987) ("Wakefield")

were to accept Plaintiff's bare assertion that this is not a termination case[2], the commissions contract at issue cannot be considered a separate contract because it fails for lack of consideration and becomes an unenforceable gratuity.  Johnson  v. Schenley Distillers Corporation 181 Md. 31, 28 A 2d 606 at 36 (1942).(A bonus promised to employees who were already employed for services they were already obligated to perform is an unenforceable gratuity).  Turner's services are contracted for in the employment contract, i.e. the original offer letter.  Turner's services are the consideration for his commissions.  The Incentive Plan does not provide for any work to be done by Turner in addition to what which he was already required to do as part of his employment arrangement with Kana.  Turner's employment offer letter, the basis for his employment agreement, refers to his commission target, thereby incorporating by reference the contractual provisions of the Incentive Plan.  See  Johnson  v. Schenley Distillers Corporation, Id., *cited with approval in*  Medex v. McCabe, 811 A.2d 297, 306,  372 Md. 28.(2002). Thus, there was no new bargained-for-exchange outside of Turner's agreement to work for Kana for an indefinite period of time, meaning he could be fired for any reason, in return for a salary and commissions earned pursuant to Kana's Incentive Plan.

Because it was already Turner's legal obligation to make and close deals as part of his at-will employment with Kana, a contemporaneous agreement governing how commissions are to be paid cannot constitute valuable consideration.  Therefore, this is not a case about a separate commissions contract, but rather, is a case concerning Turner's obligation to close sales and Kana's obligations to pay him on sales for which they recognized revenue within 30 days of an

---

[2]    Plaintiff's own Complaint asserts that this is a wrongful termination case. See Plaintiff's Complaint, at ¶6. See also Plaintiff's Opposition to Motion for Summary Judgment at p 8(citing wrongful termination cases).

employee's termination, whether or not the termination was in good faith or bad faith. [3]

3.      **Plaintiff's Complaint Pleaded This As a Wrongful Termination Claim and Not As A Breach of Good Faith in Performing the Terms of the Contract**

This is ultimately an employment contract case. An employment contract is generally formed when one party agrees to work for another party in exchange for remuneration. In the present case, Plaintiff's remuneration consisted of a base salary plus commissions, which were governed by the Incentive Plan. Therefore, because there is no separate consideration for the Incentive Plan, there can be no separate enforceable contract. Because the commissions contract cannot be seen as a separate and distinct contract, there can be no implied covenant of good faith and fair dealing.

In fact, Defendant was not given notice of the fact that Plaintiff considered its breach of contract claim to be distinct from the employment agreement until Plaintiff's Opposition to Defendant's Motion to Strike.[4]  Plaintiff noted in its Reply that Plaintiff's attempts to argue the merits of the summary judgment motion in its Opposition to Defendant's Motion to Strike should have been considered a surreply which is invalid if not done with prior consent from the Court. It

---

[3]      Defendant's admission in response to Plaintiff's Request for Admissions admitted that the Incentive Plan was enforceable with the understanding that the North American Incentive Plan was a part of the overall contract and that Turner's services were the agreed upon consideration to the employer for the commission. If it is the Court's ruling that the North American Incentive Plan is a completely separate agreement that is not part of the overall employment contract, then Defendant would move to change its answer because there is no consideration and the North American Incentive Contract is unenforceable for failure of consideration.

[4]      Plaintiff's Opposition to Defendant's Motion to Strike Affidavits, at p. 2.

was clear error for the Court to even consider the arguments made because Defendant has not had the opportunity to refute the new arguments made by Plaintiff.

Moreover, Plaintiff's Complaint in Count One at ¶6 states that Turner was "wrongfully terminated." Plaintiff's complaint alleged that Kana consummated a deal with Verizon prior to Turner's termination. However, subsequent to discovery, Plaintiff changed his legal argument and began arguing that Kana showed bad faith in terminating him before he could ever close a deal. This is a clear violation of Fed. R. Civ. P. 8, which requires that a Plaintiff satisfy basic notice pleading obligations. This means that the Plaintiff must provide the defendant with fair notice of their claim and the grounds upon which that claim rests. Conley v. Gibson, 355 U.S. 41, 47 (1957). Plaintiff framed their breach of contract claim as a case of wrongful termination. Therefore, although Rule 8 does not require Plaintiff to have alleged all the facts to be proven, it is required that the complaint sufficiently establish a basis for judgment against the Defendant. Had Defendant been on notice that Plaintiff was arguing that they believed the Incentive Plan to be completely separate and apart from the employment contract, Defendant would have presented the appropriate answer and argument in its Motion for Summary Judgment.

The only issue before the Court on Defendant's summary judgment motion was whether there was a genuine issue of material fact to enable this case to go to a jury on a breach of contract claim. Because Plaintiff's claim fails as a matter of law, Plaintiff's claim cannot properly be submitted to trial. Because the contract terms agreed to by Kana and Turner are not in dispute, the issue is whether or not Plaintiff has a valid cause of action under Maryland law beyond the express terms of the contract, thereby creating an expectancy interest. If the Court wishes to expand the narrow exception of the implied covenant of good faith and fair dealing,

that is a matter for the Maryland state courts not the Federal district court.

**C.    As A Matter of Law, Plaintiff Has Presented No Evidence To Show a Breach of the Express Provisions of Either Agreement Between the Parties**

Throughout these proceedings, Plaintiff has seemingly argued two alternative theories under its breach of contract claim: (i) breach of the implied covenant of good faith and fair dealing and (2) breach of the express provisions of the employment contract. [5]  The Court, in its Memorandum, denied Defendant summary judgment based on the theory that the covenant of good faith and fair dealing was violated by Defendant.  Under Maryland law, however, when an express contract contains clear and unambiguous terms, courts cannot imply such covenants into an at-will employment relationship. Moreover, it is well settled that a federal district court must apply the law of the forum state and may not create new law when settled state law is available. Because the contract between the parties is clear and unambiguous, there are no issues left to be decided by a jury and denial of summary judgment for Defendant was improper error.

Plaintiff's theory of the case can be framed in the form of the following question: Does an employee have a valid cause of action in Maryland against an employer for the recovery of sales commissions, if that employee is able to establish that the employer was motivated by "bad faith" when an employer, in accordance with the terms of the employment contract, terminates that employee's employment?

---

[5]     However, in its Complaint, Plaintiff only alleges that the breach of contract resulted from Kana's alleged concealment of a consummated Verizon order on March 31, 2002 and does not allege a violation of the implied covenant of good faith and fair dealing. Turner has presented no evidence to the Court, however, showing that the deal closed in March, 2002. After close of discovery, Plaintiff could present no evidence that a sale was consummated and closed in March, 2002.

It is well-established that, under Maryland law, there are only certain exceptions recognized to the general rule that employment contracts are terminable at will.[6]   Maryland courts have specifically declined to adopt the rule that a termination in bad faith can constitute a breach of contract.  See cases cited *supra* at pp. 10-11. Similarly, other jurisdictions when faced with the issue have declared an exception only in the case of egregious employer conduct as in when an employee is discharged for the sole purpose of not paying earned commissions in a situation where the express contract is silent on the issue.[7]

Stuart Turner was a salesperson for Kana. It is undisputed that he was an at-will employee who was paid a salary plus commissions. The  Incentive Plan governed how commissions were to be deemed earned and paid to Kana's sales employees. This is not disputed by Turner.  The Incentive Plan stated, "Commissions will be deemed earned and payable if the collection on the original booking occurs within 30 days of an employee's last date of employment. Except for the foregoing, commissions not earned at the time of employment terminates (*for any reason*) cannot be thereafter earned." (emphasis added). As the Court notes in its Order, it is undisputed that

---

[6]   See Adler v. American Standard Corp., 291 Md. 31, 47, 432 A.2d 464 (1981) (holding that only exception to at-will employment is when employer's motivation in terminating am employee contravenes a clear mandate of public policy).

[7]   See e.g., Murphy v. American Home Products, 58 N.Y. 2d 293, 448 N.E. 2d 86 (1983 ) (no obligation of good faith and fair dealing can be implied into an at-will employment relationship when doing so would be inconsistent with other terms of the contractual relationship"); Masarjian v. Mark Lighting Fixtures Co., 595 F. Supp. 869, 872 (D. Conn. 1984); Balzer/Wolf Assocs v. Parlex Corp., 753 F.2d 771 (9th Cir. 1985); Mirabella v. Turner Broadcasting Systems Inc., 2003 U.S. Dist. LEXIS 8343 (SDNY 2003) (employees only have a claim for breach of good faith and fair dealing if employer took actions in order to escape paying earned commissions.)

Verizon did not sign a contract with Kana until more than 30 days after Turner was terminated. Nowhere in Plaintiff's pleadings does Plaintiff even attempt to assert that he in fact earned any commission. His sole allegation is that he was entitled to remain employed by Kana on the chance that he would earn the commission at some unknown date in the future.

The Court writes in its Order that Turner "seeks only the commissions to which he alleges he would have been entitled to had Kana not discharged him in bad faith."  However, the clear and unambiguous language of the Incentive Plan states that salespersons are only entitled to commissions when they are earned and paid within 30 days after employee's termination.  His argument is that he was terminated <u>before</u> he could close the deal with Verizon.  In other words, he never earned his commission, unlike in <u>Wakefield</u> where the Plaintiff had consummated the sale prior to being terminated.

**D.    Under Maryland Law, An Implied Covenant of Good Faith and Fair Dealing Cannot Be Read Into A Clear and Unambiguous Express Contract**

Plaintiff attempts to circumvent the fact that there is no cause of action in Maryland for a violation of the implied covenant of good faith and fair dealing by switching positions, citing law from outside jurisdictions, and asserting, without any basis in law, that Kana had the obligation to keep him employed until he closed a deal, despite the fact that Turner was an at-will employee.  What remains undisputed, however, is that Kana's offer letter to Turner constituted the entire agreement between the parties. That offer letter outlined his duties and responsibilities - obligations that Turner never performed.[8]  Even though Maryland courts have implied the

---

[8]    <u>See</u> Kana's Reply to Plaintiff's Opposition to Summary Judgment at p.8. (citing evidence in the record where Turner admits he closed no sales while at Kana.

covenant into certain negotiated contracts, the cases cited by Plaintiff and by the Court only do so when the party claiming the breach can point to a specific contractual duty that was performed in bad faith. Plaintiff has not pointed to any express term of the agreements that were performed in bad faith by Kana.

Assuming arguendo that Plaintiff's interpretation of Maryland law is correct and employers cannot terminate an at-will employee unless they are given the opportunity to earn future commissions, it is well established in Maryland that the implied covenant of good faith is a very narrow one. The covenant, as applied under Maryland law, only prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract. Eastern Shore Mkts., Inc. v. J.D. Associates Ltd. P'ship, 213 F.3d 175, 182-83 (4th Cir. 2000) (citing Parker v. Columbia Bank, 91 Md. App. 346, 366, 604 A.2d 521, 531 (1992)). In the instant matter, there is no evidence presented by Plaintiff that Kana prevented Turner from performing his obligations under the contract. Turner was not denied the fruits of his labor. Turner's obligation was to procure and close sales. Turner admits that he closed no sales during his tenure at Kana. **See** fn 8. Moreover, there is no evidence nor does Turner allege that Kana interfered with his ability to close a deal with Verizon. Verizon was not able financially to close a deal in early 2002. This is undisputed.

The Incentive Plan does not change Turner's status as an at-will employee. Deutsch v. Chesapeake Center, 27 F. Supp. 2d 642, 644 (D. Md. 1998) (holding that additional documents only required employer to follow those procedures but did not alter at-will status). Similarly, the Incentive Plan is not an additional source of contractual rights. See also, Lofton v. TLC Eye Laser Eye Centers, Inc., (U.S.. Dist.Ct. D. Md, 2001). Kana employed Turner with the

9

expectation that he would obtain and consummate sales for Kana which Turner failed to do. In over a year of employment, Turner earned no commissions and failed to close even one sale. Turner received the benefit of his bargain - his salary.  Because he did not <u>earn</u> any commissions, he was not therefore paid any commissions. He failed to perform as required by his employment contract with Kana.

Maryland law does not allow for the court to impose an implied duty in this case.  Implied duties cannot act as a substitute for express contractual terms and cannot change the terms of the contract.  <u>See</u> <u>e.g.</u>, <u>Suburban Hosp., Inc. v. Dwiggins</u>, 324 Md. 294, 596 A.2d 1069, 1076-77 (Md.1991) (declining to extend an implied covenant of good faith and fair dealing to an at-will employment contract); <u>Waller v. Maryland Nat'l Bank</u>, 95 Md.App. 197, 620 A.2d 381, 388 (Md.Ct.Spec.App.) ("The implied duty of good faith does not change the terms of the contract."), *vacated on other grounds*, 332 Md. 375, 631 A.2d 447 (Md.1993) 604 A.2d at 531 ("[T]he duty of good faith ... does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under its [contract]."). In other words, the Court cannot impose a duty on Kana to keep Turner employed until Verizon was able to obtain financing for the deal. To imply such a duty would change Turner's status as an at-will employee.

In those states that do recognize an implied duty of good faith and fair dealing, the purpose of that covenant is to protect the contracting parties' reasonable expectations. See <u>James v. Whirlpool Corp</u>., 806 F.Supp. 835, 843 (E.D.Mo.1992). In this case,  the contractual expectations of the parties in the case at hand were that (1) either party could terminate the contract for any reason, and (2) that an employee who was terminated or resigned would receive commissions <u>earned</u> if the collection on the original qualified booking occurred within 30 days of

10

the employee's last date of employment.  The contract further states that Kana has final

determination on what constitutes a qualified booking.  Because both the "at will" clause in the

contract and the express terms of the Plan are unambiguous, the implied covenant of good faith

may not displace it. See also, Naden v. Sega Software, 11 Fed. Appx. 381, 2001 WL 672071 (4th

Cir. Md. 2001)(*upholding a commissions plan that had clear and unambiguous terms governing*

*when commissions were earned and granting summary judgment to the employer).*  In fact,

Maryland state courts and other courts interpreting Maryland law have indicated that the implied

covenant of good faith and fair dealing will not often serve to impose such limitations on

bargained-for contract provisions. See, Dupont Heights Ltd. Partnership v. Riggs Nat'l Bank 949

F.Supp. 383, 389 (D.Md.1996) ("To the extent that a duty of good faith and fair dealing exists in

Maryland, it is of very narrow scope."); Suburban Hosp., Inc. v. Dwiggins 596 A.2d 1069, 1076-

77 (Md.1991) (declining to extend an implied covenant of good faith and fair dealing to an

express employment contract); Waller v. Maryland Nat'l Bank, 620 A.2d 381, 388

(Md.Ct.Spec.App.) ("The implied duty of good faith does not change the terms of the contract .")

        In those states such as New Jersey and Massachusetts that do recognize an implied

covenant of good faith and fear dealing in employment contracts, there are two requirements. The

first requirement is that the discharge be done in bad faith and the second requirement is that the

interest or claim relate to past services, not future expectancies.  Fortune v. National Cash

Register Co., 364 N.E. 2d 1251 (Mass. 1977) (Mass. law allows the courts to imply a covenant of

good faith and fair dealing, thereby treating the termination as a breach but only awarding

compensation for commissions earned and closed <u>before</u> termination).[9]

Because available Maryland state law adequately informs our resolution of this case, it

was error for the court to resort to New Jersey law.  Nonetheless, even under New Jersey law,

this case would not be able to defeat summary judgment.  As noted earlier, the implied duty of

good faith and fair dealing in Maryland is of limited scope and only operates where it would not

contradict a contract's express terms. <u>Enfield Equipment Co., Inc. v. John Deere Co.</u>, 64

F.Supp.2d 483 D.Md (1999).  This is different from the substantive law in New Jersey, where the

obligation to act in good faith exists even in contracts that contain express and unambiguous

provisions. <u>Electronics Store, Inc. v. Cellco Partnership</u>, 732 A.2d 980 Md.Spec.App.,1999.

**E.      Even If <u>Wakefield</u> Were Controlling Precedent, Summary Judgment Would Still**

**Have Been Proper for Kana**

The Court, in its Memorandum, finds the Second Circuit's reasoning in <u>Wakefield</u> to be

persuasive and asserts that the facts were nearly identical to the present controversy. However,

there are some key differences between the instant case and <u>Wakefield</u>.[10]  Plaintiff's claim in

<u>Wakefield</u> was a breach of employment contract, i.e. a wrongful termination case. The Court, in

applying New Jersey law, did not treat the commissions plan as a separate contract, but rather

applied New Jersey's rule that a covenant of good faith should be implied in at-will employment

situations when not to do so would deprive a salesperson of a <u>previously earned</u> commission.  No

---

[9]      The <u>Fortune</u> case is considered to be the seminal case concerning the implied covenant of good faith and fair dealing in the context of employees who earn sales commissions.

[10]     It should be noted that the court in <u>Wakefield</u> applied New Jersey law and not New York law as both Plaintiff and Court erroneously state.

such rule exists under Maryland law.

Additionally, in Wakefield, there was no express provision governing when commissions would be paid post-termination. Kana's Incentive Plan contained a contingency for this situation. The express contingency was that the booking be a qualified booking and paid within 30 days of date of termination. In Wakefield and cases cite by the Wakefield court, the sales were all completed prior to the employee's termination. Wakefield stands for the proposition that, under New Jersey law, an employer may not deprive an at-will employee compensation to which he would otherwise be entitled to were it not for the fact that a condition of the contract was that said employee be employed at the time of payment.

## F.    No Genuine Issue of Material Fact Even if We Assume That Turner Has a Valid Claim Under Maryland Law

The Court recognizes that Turner concedes that he was not due a commission on the ultimate sale of software from Kana to VIS that was consummated in June of 2002, more than 30 days after Turner's termination. The Court then states that there was enough evidence produced by Turner to create a genuine issue of material fact as to Kana's motivation for firing him. However, Kana's motivation in firing him goes to whether or not there was good cause in firing him which would destroy his at-will status. The issue is either (1) did Kana have bad faith in denying Turner a contractual earned benefit or (2) did Kana have bad faith in firing him. Plaintiff cannot present evidence going to termination (as opposed to evidence showing that he earned the commission and was thereby denied a contractual benefit) while presenting zero evidence that the commission was earned. Therefore, they turn this into a termination case when convenient but frame it as a commissions contract case when convenient and no law supports

13

them.

The issue is whether Turner has produced enough evidence to create a genuine issue of material fact as to whether he earned this commission and, if there is an implied covenant found - whether Kana prevented Turner from performing his obligations under the contract. Turner presents no evidence on this. The only evidence that Turner presents is evidence that certain members of Kana did not like working with him. He fails to present evidence that the commission was in fact earned. Moreover, as stated previously, because he was an at-will employee, he could be fired at any point and for any reason so long as he was paid for sales that closed within 30 days of his departure. Under the Incentive Plan, Turner would still be entitled to compensation for commissions earned to that point and paid to Kana within 30 days. Had this been the case, Turner would then arguably have a claim for breach of contract or wages due under the MD Wage Payment Collection Act. However, the fact of the matter is <u>not</u> what Kana's intentions were in firing him but whether he earned a commission, i.e. a contractual benefit. The implied duty of good faith only comes into play if Plaintiff can present evidence indicating that he <u>earned</u> a contractual benefit and was then denied that benefit. Plaintiff has not met its obligation to do this, thereby making summary judgment proper for Defendant. Even in states where such a claim is allowed, no jurisdiction has found liability when a salesperson is prevented from earning <u>future</u> commissions.

As Judge Chasanow stated in <u>Dwiggins</u>, "Specific modifications to the at-will relationship should not be an indication that the employer intends to go beyond the specific modifications and add an implied covenant of fair dealing to the at-will relationship. Because at-will agreements allow an employer to discharge an employee for bad cause, the covenant would

14

impose a duty on the employer to use good faith in making bad cause discharges, a proposition

that is merely a semantic step away from a flat contradiction." <u>Dwiggins</u> at p.310.

**Conclusion**

In Summary, Defendant should have been granted summary judgment for the following

reasons:

(i)      Maryland law requires that contracts with clear and unambiguous terms be

enforced according to their terms and there is no language in the terms of the agreements

between Kana and Turner that suggests that anything other than a right of termination at

will. Hence, neither cause nor good faith is required before the agreement can be

terminated and good faith is not and cannot be a genuine issue.


(ii)     Plaintiff presents no evidence to indicate he earned a commission prior to his

termination. Under Maryland law, there is no precedent allowing a salesperson to obtain

commissions on sales not completed before termination. The only evidence before the

court is Plaintiff's admission that Kana did not get paid on the Verizon deal until more

than 30 days after Turner's termination.


(iii)     Maryland courts and other jurisdictions reviewing claims on alleged commissions

owed view the commissions contract as part of the employment agreement, not a separate

agreement that vitiates an employee's at-will status.


(iv) Under principles of basic contract law and under Maryland precedent, there is no

15

consideration given by the employee for entering into a separate commissions contract.

Therefore, the Incentive Plan cannot stand alone.

Because motivation and state of mind is not a genuine issue in the instant case, it would

be clear error to deny summary judgment to the Defendant.

                        Respectfully Submitted,

                        _____/s/_____
                        Rebecca N.  Strandberg
                        Federal District Court Bar No.  02196
                        REBECCA N.  STRANDBERG & ASSOCIATES, P.A.
                        4405 East West Highway, Suite 308
                        Bethesda, Maryland 20814
                        (301) 656-9547

                        **<u>REQUEST FOR HEARING</u>**


Defendant respectfully requests a hearing on this motion.


                        _____/s/_____

                        Rebecca N. Strandberg

16

**CERTIFICATE OF SERVICE**

     **I HEREBY CERTIFY** this 6th day of September, 2003 that a copy of the foregoing

Defendant's Motion For Reconsideration was served electronically on:

Mark London, Esquire
Christopher B. Mead, Esquire
London and Mead
Suite 320
1225 19th Street, N.W.
Washington, D.C.  20036

*Counsel for Plaintiff Stuart Turner*

_____/s/_____

Rebecca Newman Strandberg, Esquire

17

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

**Northern Division**

| | | |
|---|---|---|
| STUART TURNER | : | |
|     Plaintiff | : | |
| v. | : | Civil No. WMN 02CV2451 |
| KANA SOFTWARE, INC. | : | |
|     Defendant | : | |

**ORDER**

**UPON CONSIDERATION** of Defendant's Motion for Reconsideration herein, and any Opposition thereto, it is by the Court this _____ day of _____, hereby ORDERED that the said Motion be, and hereby is GRANTED, and it is further ORDERED

that Judgment is granted for the Defendant and the Complaint is dismissed with prejudice; and it is further ORDERED,

that Plaintiff be, and hereby is directed to pay _____ in attorneys fees; and it is further ORDERED

_____

_____

_____.

So ordered.

18

_____

**William M. Nickerson**

Senior United States District Court Judge

cc:

Rebecca N. Strandberg, Esquire

REBECCA N. STRANDBERG & ASSOCIATES, P.A.

4405 East West Highway, Suite 308

Bethesda, Maryland  20814

Christopher B. Mead, Esquire

London and Mead

Suite 320

1225 19th Street, N.W.

Washington, D.C.  20036